**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| WILLIAM C. CLAYBORNE, #368-289, | * |
| Plaintiff, | * |
| v. | *    Civil Action No. PWG-18-1931 |
| ASSISTANT WARDEN WALTER WEST,[1] <br> LT. HORCE PEPPERS, <br> LT. PATRICIA GATTIS, <br> CO JOSHUA WEISENBURG, <br> CAPTAIN ANTOINETTE PERRY, | * <br><br> * <br><br> * |
| Defendants. | * |

## MEMORANDUM OPINION

Plaintiff William C. Clayborne, a prisoner in Maryland state prison, filed this action under 42 U.S.C. § 1983 against former Eastern Correctional Institution ("ECI") Assistant Warden Walter West[2] and ECI Officers Horce Peppers, Patricia Gattis, Joshua Weisenburg and Antoinette Perry. Compl. 1, ECF No. 1; Am. Compl., ECF No. 6. Clayborne claims that, while he was incarcerated at ECI, Officer Weisenburg falsely reported that he threatened Weisenburg, after which he was housed in the Administrative Segregation Observation Area ("ASOA") from February 26, 2018 to March 9, 2018, where he was denied access to his legal mail and "mistreated very badly." Compl. 1. He claims that the delay in receiving his mail "caused [his state court] case to be dismissed," and he seeks injunctive and monetary relief to remedy that alleged wrong. Compl. 1; Am. Compl. 3. Additionally, he seeks monetary damages to compensate for his alleged "inhumane treatment." Compl. 1; Am. Compl. 3. And, he asks the Court to provide him with the diminution credits he

---

[1] The Clerk shall amend the docket to reflect the proper titles and full spelling of Defendants' names, as noted in the above caption.

[2] Defendant West became Warden at ECI in March 2019. *See* https://www.linkedin.com/in/walter-west-14568970 (last reviewed Aug. 29, 2019).

claims he could have received if he had not been transferred repeatedly among Maryland's state prisons. Am. Compl. 3.

Defendants have moved to dismiss or, alternatively, for summary judgment in their favor, arguing, *inter alia*, that Clayborne failed to exhaust administrative remedies as to his claim that he was denied access to his legal mail and failed to state a claim based on his alleged inhumane treatment. Defs.' Mot., ECF No. 19; *see* Defs.' Mem., ECF No. 19-1. Clayborne opposes Defendants' dispositive motion, ECF No. 20, and requests appointment of counsel. ECF No. 22.[3] The pending motions may be decided without a hearing. *See* Loc. R. 105.6 (D. Md. 2018). Because Clayborne competently presents his claims and I am not holding a hearing in this case, appointment of counsel is DENIED. Clayborne's requests for mandamus relief are dismissed for lack of jurisdiction. Regarding Clayborne's claim that he was denied access to his legal mail, Defendants' motion, treated as a motion for summary judgment, is GRANTED, and the Complaint is DISMISSED without prejudice for failure to complete administrative exhaustion. As for Clayborne's claim of inhumane treatment, Defendants' motion, treated as a motion to dismiss, is GRANTED because Clayborne fails to state a claim against Defendants.

**Standards of Review**

With regard to all but Defendant's argument that Clayborne failed to exhaust administrative remedies, I am not considering any evidence other than the Administrative Remedy Procedure ("ARP") grievances that are attached to or integral to the Complaint, and Clayborne does not dispute their authenticity. *See* ECF No. 1-1; ECF No. 19-2, at 18. Accordingly, I will treat Defendants' motion as a motion to dismiss for all arguments but the administrative exhaustion

---

[3] Defendants have not filed a reply to Clayborne's opposition, or a response to his motion for appointment of counsel, and the time for doing so has passed. *See* Loc. R. 105.2(a).

2

argument, for which I will treat it as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d), 10(c); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999). Clayborne's claims are subject to dismissal if they "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 12(b)(6)'s purpose "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012) (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).

For purposes of resolving a motion to dismiss, the Court accepts the plaintiff's well-pleaded allegations as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011). While this Court is required to liberally construe documents that self-represented litigants file and hold them to a less stringent standard than those that attorneys draft, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set forth a claim currently cognizable in a federal district court, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

3

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). "A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Cole v. Prince George's Cty.*, 798 F. Supp. 2d 739, 742 (D. Md. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 & n.10 (1986).

**Background**

Clayborne claims that Defendant Weisenburg "fabricated a story that [Clayborne] had threatened him," after which Clayborne was placed on Administrative Segregation pending an adjustment hearing, and held from February 26, 2018 through March 9, 2018 in ASOA. He alleges that, while housed at ASOA, he was denied access to the courts for a period of two and a half weeks because he was not permitted to sign for and receive his legal mail or writing material. Compl. 1, 4; Am. Compl. 2. He claims that, as a result of this delay, his appeal of an agency decision issued by the Department of Public Safety and Correctional Services ("DPSCS") was

dismissed in the Circuit Court for Somerset County when he failed to respond to a dispositive motion.[4]  Compl. 1, 3-4.

Clayborne also complains about the conditions during his confinement in ASOA, stating he did not have a change of underwear, could not wash his hands, received "food in paper bags" and had to eat without utensils, and often his breakfasts consisted of "toast and jelly."  Compl. 1-3.  Clayborne identifies Captain Perry as the shift commander during his ASOA placement, Lieutenant Gattis as the officer overseeing the area, and Lieutenant Peppers as the officer to whom he complained.  He states that Defendant West "never addressed [his] inhumane treatment nor denial of legal mail but had someone else answer the ARP by dismissing it." Am. Compl. 2.

Clayborne filed an ARP, ARP ECI-0582-18, complaining about the denial of access to his legal mail and the poor conditions of confinement he experienced while housed in ASOA.  March 10, 2018 ARP, ECF No. 1-1, at 1-2.  The Warden's Office received it on March 12, 2018 and dismissed it that day for procedural reasons—it raised multiple issues, and inmates are required to

---

[4] *See In re Clayborne,* Case No. C-19-CV-18-000017 (Cir. Ct. Somerset Co.), http://casesearch.courts.state.md.us/casesearch/inquiry (last reviewed Aug. 28, 2019).  Although not dispositive here, examination of the electronic docket and Clayborne's grievance, ARP-ECI-0582-18 do not lend support for Clayborne's allegation of harm.  The court docket shows that Clayborne's petition was received by the Clerk on January 24, 2018, and he was granted leave to proceed without prepayment of costs on January 30, 2018.  The docket shows, and Clayborne notes in his ARP, that on February 21, 2018, Clerk of Court Charles T. Horner mailed a letter to him concerning response deadlines.  March 10, 2018 ARP, ECF No. 1-1, at 1.  On February 26, 2018, Clayborne was placed in ASOA, the same day Horner's letter arrived at ECI.  March 10, 2018 ARP, ECF No. 1-1, at 1-2.  On March 1, 2018, DPSCS responded to the petition and additionally filed a motion to dismiss with supporting exhibits.  Clayborne then had 15 days under Md. Rule 7-207(a), or until March 16, 2018, to file a reply memorandum or to seek an extension of the deadline under Md. Rule 7-207(c)(2).  He received the letter from Horner on March 2, 2018 and was released from ASOA on March 9, 2018.  March 10, 2018 ARP, ECF No. 1-1, at 1-2.  The state court docket reflects that his Md. Rule 7-207 memorandum was filed on March 21, 2018. On March 23, 2018, the Circuit Court dismissed the case.

5

file a separate ARP for each issue. *Id.* at 1. Clayborne was given until March 28, 2018 to resubmit a grievance containing only a single issue. *Id.*

On March 19, 2018, the Warden's Office received Clayborne's resubmission, ARP ECI-0582-18, dated March 15, 2018, which centered entirely on the withholding of his legal mail during his time in ASOA.[5] March 15, 2018 ARP, ECF No. 1-1, at 5. On April 13, 2018, the ARP was dismissed as unsubstantiated. ECF No. 19-2, at 18. On April 26, 2018, Clayborne appealed the Warden's dismissal of his ARP concerning receipt of legal mail; the Commissioner of Correction received the appeal on May 14, 2018. ECF No. 1-1, at 6, 8. The outcome of the headquarters appeal is not apparent from the record; however, IGO employee Samiyah Hassan declares that Clayborne did not file an IGO complaint concerning the withholding of legal mail. Hassan Decl. 1, ¶ 3, ECF No. 19-4.

**Analysis**

Appointment of Counsel

Clayborne requests appointment of counsel based on his lack of knowledge about the justice system. ECF No. 22. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). There is no absolute right to appointment of counsel; an indigent claimant must present "exceptional circumstances." *See Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it." *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490

---

[5] Clayborne file another ARP on April 23, 2018, expressing concern that his earlier ARPs were not received. ARP ECI-1831-18, ECF No. 1-1, at 4. An ARP coordinator dismissed it as repetitious on April 24, 2018. *Id.*

U.S. 296, 298 (1989). Exceptional circumstances may be present where a litigant "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008).

Clayborne is a capable litigant who has clearly explained his claims. As noted, a hearing is not necessary, and none of Clayborne's claims will not proceed. Therefore, appointment of counsel is not warranted. *See Whisenant*, 739 F.2d at 162-63; *Berry*, 587 F. Supp. 2d at 723.

Mandamus Relief

Clayborne asks the Court to reopen his state court case and "credit [him] the time lost that he could have worked off his sentence had not D.O.C. kept transferring" him to different state prisons. Am. Compl. 3. This is a request for mandamus relief, as it "would compel a certain action by the state and/or its agents." *Trent v. Dep't of Pub. Safety & Corr. Servs.*, No. CCB-12-2627, 2013 WL 2278308, at *1 n.2 (D. Md. May 13, 2013); *see* 28 U.S.C. § 1361. This Court has "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the *United States* or one of *its* agencies to perform a duly owed to a petitioner" but it "has no mandamus jurisdiction over *state* employees and cannot compel a *Maryland state* agency to take a particular action." *Id.* Similarly, "[t]his Court has no jurisdiction to issue a writ of mandamus commanding a state court to entertain a motion or cause of action. *Sewell v. Wagner*, No. GJH-16-2458, 2016 WL 4051717, at *2 (D. Md. July 27, 2016) (citing *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586, 587 (4th Cir. 1969); 28 U.S.C. § 1361). Insofar as Clayborne seeks mandamus relief, his claims are dismissed for lack of jurisdiction. *See id.*; *Trent*, 2013 WL 2278308, at *1 n.2; 28 U.S.C. § 1361.

Exhaustion

Defendants raise the affirmative defense that Clayborne has failed to exhaust his administrative remedies. The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he phrase 'prison conditions' encompasses 'all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" *Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003) (quoting *Porter v. Nussle*, 534 U.S. 516, 532 (2002)), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

A claim that has not been exhausted may not be considered by this Court. *See Jones v. Bock*, 549 U.S. 199, 220 (2007). In other words, exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily "may not excuse a failure to exhaust." *Id.* at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion")). Moreover, "[e]xhausting administrative remedies after a complaint is filed will not prevent a case from being dismissed for failure to exhaust administrative remedies. Exhaustion is a precondition to filing suit in federal court." *Kitchen v. Ickes*, 116 F. Supp. 613, 624-25 (D. Md. 2015) (internal citation omitted).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. Md. Code Ann., Corr. Servs. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See id.* § 10-206(b). There is an established administrative remedy procedure process that applies

to all Maryland prisons. Md. Code Regs. ("COMAR") 12.02.28.01 *et seq.* Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

Thus, for most grievances filed by Maryland state prisoners, filing a request for administrative remedy ("ARP") with the prison's managing official is the first of three steps in exhausting administrative remedies as required under § 1997e(a). *See* COMAR 12.07.01.04. The ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the inmate first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. *Id.* at 12.07.01.05A. If the request is denied, a prisoner has 30 calendar days to file an appeal with the Commissioner of Correction. *Id.* at 12.07.01.05C. If the appeal is denied, the prisoner then has 30 days to file a grievance with the IGO. *See* Corr. Servs. §§ 10-206, 10-210; COMAR 12.07.01.03 and 12.07.01.05B. If the Commissioner fails to respond, the prisoner must file any IGO grievance within 30 days of the date the response was due. COMAR 12.07.01.05B(2).

The IGO then reviews the complaint and either dismisses it without a hearing, if it is "wholly lacking in merit on its face," or refers it to an administrative law judge for a hearing.[4] Corr. Servs. §§ 10-207, 10-208; Cts. & Jud. Proc. § 10-208(c); COMAR 12.07.01.06A, .07, .07B, .08. The administrative law judge, in turn, may deny all relief or conclude that the inmate's complaint is wholly or partly meritorious, after which the Secretary of DPSCS must make a final agency determination within fifteen days of receipt of the proposed decision. *See* Corr. Servs. § 10-209(b)-(c).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA."

136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id.* at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id.* at 1855. The *Ross* Court explained that an administrative remedy is available for purposes of the PLRA if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Exhaustion is also required even though the full relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741. Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. These are when (1) the remedy operates as a "simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so "opaque" as to become "practically speaking, incapable of use"; or (3) prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

The undisputed evidence shows that Clayborne did not pursue his claim regarding conditions of confinement in the ASOA through the entire administrative process. Rather, when his initial March 10, 2018 ARP was dismissed, he only submitted a renewed ARP regarding the denial of access to his legal mail; he did not file a new ARP regarding his conditions of confinement. Given that Defendants do not raise this deficiency regarding his conditions of confinement claim, *see* Defs.' Mem. 6 ("Defendants are entitled to dismissal because Plaintiff has failed to exhaust his administrative remedies *regarding any denial of mail*." (emphasis added)), I cannot dismiss on this basis *sua sponte*. *Custis v. Davis*, 851 F.3d 358, 362 (4th Cir. 2017).

As for his renewed ARP regarding the denial of access to his legal mail, he appealed its dismissal, but when he did not receive a timely response from the Commissioner, he did not file an IGO grievance as required. *See* Hassan Decl. 1, ¶ 3; COMAR 12.07.01.05B(2). Thus, Clayborne abandoned the process prematurely by not following through beyond submitting an ARP to the Warden and appealing it to the Commissioner of Correction. He has not shown any reason he could not file a grievance with the IGO, that would excuse his failure. *See Ross*, 136 S. Ct. at 1859. He therefore has failed to properly exhaust administrative remedies on this claim, thwarting the purpose of administrative exhaustion. *See id.* Consequently, Clayborne's claim for denial of access to his legal mail is dismissed without prejudice. *See Kitchen*, 116 F. Supp. 3d at 624-25.

<u>Personal Participation</u>

Because "the PLRA exhaustion requirement is not jurisdictional," this Court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact properly exhaust available administrative remedies." *Woodford v. Ngo*, 548 U.S. 81, 101 (2006). Significantly, personal fault is necessary to establish liability under 42 U.S.C. § 1983, whether based on the defendant's own conduct or another's conduct in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978); *West v. Atkins*, 815 F.2d 993, 996 (4th Cir. 1987), *rev'd on other grounds*, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (for an individual defendant to be held liable pursuant to § 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights") (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md. 1971), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)). An individual cannot

be held liable under § 1983 under a theory of respondeat superior.[6] *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Thus, to establish § 1983 liability, a plaintiff must show that a defendant was personally involved in the alleged deprivation of his constitutional rights, *Vinnedge*, 550 F.2d at 928–29, or establish the defendant's liability as a supervisor, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). A defendant may be liable under the theory of supervisory liability in a § 1983 action if (1) the defendant had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) the defendant's response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between defendant's inaction and the alleged constitutional injury. *Shaw*, 13 F.3d at 799.

Even after having the opportunity to amend to address his pleading deficiencies, *see* Order, ECF No. 5 (directing Plaintiff to supplement his complaint "to include: the names of the individuals whom he claims are responsible for his conditions of confinement … ' whether he has been injured as a result of such placement; and any other facts supporting his claim"), Clayborne does not allege any action or inaction by Defendants that resulted in any denial of his constitutional rights. He claims Officer Weisenburg falsely reported being threatened by him, which led to Clayborne spending time in ASOA, but the alleged constitutional wrongdoings (e.g., no change of underwear, bag meals) pertain to Clayborne's time in ASOA, and he does not allege that Officer Weisenburg had any role in his conditions in ASOA. *See* Compl. 1; Am. Compl. 2. He claims that Captain Perry was the shift commander during his ASOA placement and Lieutenant Gattis was

---

[6] Respondeat superior is a legal doctrine that in some circumstances an employer is responsible for the actions of employees performed within the course of their employment.

the officer overseeing the area, but he does not claim that either knew of his conditions of confinement, took any action, or refused to act.

Clayborne also alleges that he complained to Lieutenant Peppers and filed an ARP that then-Assistant Warden West did not address. Am. Compl. 2. Yet, other than permitting Clayborne to file an ARP (which Clayborne did), it is unclear what action Lieutenant Peppers could have taken with regard to the allegations, as Clayborne did not identify any actions by any subordinates for the supervisor to address. As for then-Assistant Warden West, Clayborne's ARP was addressed; it was denied. Thus, there was no additional action for Defendant West to take, and Clayborne cannot show that his response to Clayborne's ARAP was inadequate. Clayborne fails to state a claim as to any of the Defendants. *See Shaw*, 13 F.3d at 799.

## CONCLUSION

In sum, Clayborne's motion for appointment of counsel, ECF No. 22, is DENIED. Clayborne's requests for mandamus relief are dismissed for lack of jurisdiction. Defendants' motion, ECF No. 19, treated in part as a motion to dismiss and in part as a motion for summary judgment, is GRANTED. Clayborne's claim for denial of access to his legal mail is dismissed without prejudice for failure to exhaust administrative remedies, and the remaining claims are dismissed for failure to state a claim.

A separate Order follows.

September 5, 2019 _____/S/_____
Date  Paul W. Grimm
 United States District Judge